UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KELLYE BENSON, o/b/o B.S., | CASE NO. 1:16CV874 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| NANCY A. BERRYHILL[1], ACTING COMMISSIONER OF SOCIAL SECURITY, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

Kellye Benson ("Plaintiff"), acting on behalf of B.S. ("Claimant"), her minor son, seeks judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying his application for Supplemental Security Income ("SSI"). ECF Dkt. #1. In her brief on the merits, filed on August 4, 2016, Plaintiff asserts that the administrative law judge ("ALJ") unreasonably found that Claimant did not have an impairment or combination of impairments that were functionally equivalent to a listed impairment. ECF Dkt. #13 at 9-13. On October 27, 2016, Defendant filed a response brief. ECF Dkt. #18. Plaintiff did not file a reply brief.

For the following reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for SSI on behalf of Claimant in December 2012, alleging a disability onset date of September 13, 2006. ECF Dkt. #12 ("Tr.") at 123, 136.[2] The claim was denied initially and upon reconsideration. *Id.* at 60-76. Following the denial of the claim, Plaintiff requested a hearing. *Id.* at 86. Accordingly, a hearing was held on September 9, 2014, where the ALJ heard testimony from Claimant, Plaintiff, and a medical expert ("ME"). *Id.* at 31-59. On December 29, 2014, the ALJ issued a decision denying Plaintiff's claim. *Id.* at 13. Subsequently, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. *Id.* at 1. Accordingly, the decision by the ALJ on December 29, 2014, stands as the final decision.

On April 13, 2016, Plaintiff filed the instant suit seeking review of the ALJ's decision issued on December 29, 2014. ECF Dkt. #1. On August 4, 2016, Plaintiff filed a brief on the merits. ECF Dkt. #13. Defendant filed a response brief on October 27, 2016. ECF Dkt. #18. Plaintiff did not file a reply brief.

## II. STEPS TO DETERMINE WHETHER CHILD IS ENTITLED TO SSI

In order to qualify for childhood SSI benefits, a claimant must show that he or she has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and that is expected to cause death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.906. An ALJ must proceed through the required sequential steps for evaluating entitlement to childhood SSI. 20 C.F.R. § 416.924(a). The three-step procedure requires the ALJ to determine whether a child:

(1) is performing substantial gainful activity;

(2) has a "severe" impairment or combination of impairments; and

---

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as a .PDF, rather that the page numbers assigned by the CM/ECF system. When the Transcript was filed the .PDF included an index, with the indexed pages differentiated from the numerical pages. Accordingly, the page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than the page number assigned when the Transcript was filed in the CM/ECF system.

> (3) whether the impairment or combination of impairments are of listing-level severity in that the impairment(s) either meets, medically equals or are the functional equivalent in severity to an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 ("Listing").

20 C.F.R. § 416.924(a)-(d). In order to *meet* a Listing, the child's impairment(s) must be substantiated by medical findings shown or described in the listing for that particular impairment. 20 C.F.R. § 416.925(d) (emphasis added). In order to *medically equal* a Listing, a child's impairment(s) must be substantiated by medical findings at least equal in severity and duration to those shown or described in the listing for that particular impairment. 20 C.F.R. § 416.926(a) (emphasis added.) In order to *functionally equal* a Listing, the child's impairment(s) must be of listing-level severity; *i.e.*, it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a) (emphasis added.)

> The Commissioner assesses all relevant factors, including:
>
> (1) how well the child initiates and sustains activities, how much extra help he needs, and the effects of structured or supportive settings;
>
> (2) how the child functions in school; and
>
> (3) how the child is affected by his medications or other treatment.

20 C.F.R. § 416.926a(a)(1)-(3). Further, in considering whether a child's impairment functionally equals the Listings, the Commissioner begins by evaluating how a child functions on a daily basis and in all settings as compared to other children of the same age who do not have impairments. 20 C.F.R. § 416.926a(b).

The Commissioner considers how a child's functioning is affected during his activities at home, school, and in his community in terms of six domains:

> (i) acquiring and using information;
>
> (ii) attending and completing tasks;
>
> (iii) interacting and relating with others;
>
> (iv) moving about and manipulating objects;
>
> (v) caring for yourself; and,
>
> (vi) health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi).

Lengthy definitions for "marked" and "extreme" are set out in § 416.926a(e). "Marked" limitation means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. *See* § 416.926a(e)(2)(i). "Extreme" limitation is the rating for the worst limitations. However, "extreme" limitation does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning that would be expected on standardized testing with scores that are at least three standard deviations below the mean. See 20 C.F.R § 416.926a(e)(3)(I).

An individual has a "marked" limitation when the impairment "interferes seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation exists when the impairment "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). An extreme limitation may also seriously limit day-to-day functioning. *Id.*

If the child's impairment meets, medically equals, or functionally equals the Listings, and if the impairment satisfies the Social Security Act's duration requirement, then the child is considered disabled. 20 C.F.R. § 416.924(d)(1). If both of these requirements are not satisfied, then the child is not considered disabled. 20 C.F.R. § 416.924(d)(2).

### III. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion.

*Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997. Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## IV. SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

After stating the applicable law, the ALJ indicated that Claimant was born on September 15, 2003, and was thus a school-age child on the date the application was filed. Tr. at 16. The ALJ noted that Claimant had not engaged in substantial gainful activity since the application date. *Id.* Next, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* The ALJ also found that Claimant did not have an impairment or combination of impairments that functionally equaled the severity of the listings. *Id.* Continuing, the ALJ determined that Claimant did have some mental health issues, however, Plaintiff's allegations were not fully credible as the record documented minimal treatment and that treatment was sporadic. *Id.* at 19. Further, the ALJ stated that Claimant had been prescribed medications which were relatively effective in controlling his symptoms, and that some of Claimant's troublesome behavior was volitional and related to his "life situation" rather than symptoms of a mental impairment.[3] *Id.*

After considering the opinions of the ME, state agency psychological consultants, Claimant's teachers, and Claimant's intervention specialist, the ALJ addressed the six functional equivalence domains. Tr. at 19-26. As to each of the six functional equivalency domains, the ALJ found that Claimant had:

1. Less than marked limitation in acquiring and using information.
2. Less than marked limitation in attending and completing tasks.
3. Marked limitation in interacting and relating to others.

---

[3]Used in this context, "life situation" appears to be referring to Claimant's issues surrounding the reliability of his caregivers, specifically, Plaintiff and Claimant's father. *See* Tr. at 18-19.

4.      No limitation in moving about and manipulating objects.

            5.      Less than marked limitation in the ability to care for himself.

            6.      No limitation in health and physical well-being.

*Id.* at 21-26.

Plaintiff only takes issue with the ALJ's findings regarding Claimant's ability to attend and complete tasks. ECF Dkt. #13 at 10-13. Accordingly, while the ALJ devoted a large portion of the decision to addressing each of the six functional equivalency domains, the Court only need address the ALJ's treatment of the domain of attending and completing tasks. *See* Tr. at 20-26.

First, the ALJ explained that the domain of attending and completing tasks considers how well a child is able to focus and maintain attention, as well as the child's ability to begin, carry through, and finish activities, including consideration of the mental pace at which the activities are performed and the ease of changing activities. Tr. at 22. The ALJ also stated that this domain also refers to a child's ability to avoid impulsive thinking, prioritize completing tasks, and manage time. *Id.*

Continuing, the ALJ indicated that the Social Security Rules ("SSR") provide that a school-age child without an impairment should be able to focus his attention in a variety of situations in order to: follow directions; remember and organize school materials; complete classroom and homework assignments; concentrate on details and not make careless mistakes in his work beyond what would be expected of other children of the same age; change activities or routines without distraction and stay on task and in place when appropriate; sustain attention well enough to participate in group sports; read by himself; complete family chores; and complete transition tasks (*e.g.*, be ready for the school bus, change clothes after gym class, change classrooms) without extra reminders and accommodations. *Id.*

The ALJ also cited 20 C.F.R. § 416.926a(h)(3) and SSR 09-4p for examples of limited functioning in this domain that children of different ages might display. Tr. at 22. The examples of difficulties children could have in attending and completing tasks cited by the ALJ were: (i) is easily startled, distracted, or over-reactive to everyday sounds, sights, movements, or touch; (ii) is slow to focus on, or fails to complete, activities of interest (*e.g.*, games or art projects); (iii)

repeatedly becomes side-tracked from activities of frequently interrupts others; (iv) is easily frustrated and gives up on tasks, including ones he is capable of completing; (v) requires extra supervision to remain engaged in an activity; or (vi) cannot plan, manage time, or organize self in order to complete assignments or chores.  *Id.*

After stating the above, the ALJ indicated that Plaintiff reported that Claimant did not finish what he started, did not complete homework or chores, and did not remember or focus. Tr. at 22.  The ALJ then stated that at the hearing Claimant testified that he did not finish his chores because he became bored and did not want to do the chores, and that he was not distracted at school, but did not finish his classwork.  *Id.*  Continuing, the ALJ indicated that the record did reflect that Claimant experienced some difficulty with hyperactivity and inattention, but his ability to attend to tasks improved when he took his medication.  *Id.*  The ALJ stated that in November 2012 one of Claimant's reported strengths was that he could be persistent when he wanted to learn something new.  *Id.*  Additionally, the ALJ noted that Claimant's teacher also reported that he was very organized and could transition well from activity to activity.  *Id.*  For these reasons, the ALJ determined that Claimant had less than a marked limitation in the domain of attending and completing tasks, and indicated that this determination was consistent with the determination of the state agency psychological consultants and the ME.  *Id.* at 22-23.  Based on these findings, and the additional findings regarding the other five functional equivalency domains, the ALJ determined that Claimant had not been disabled, as defined in the Social Security Act, since December 11, 2012, the date the application was filed.  *Id.* at 26.

## V.    **ANALYSIS**

Plaintiff asserts that the ALJ unreasonably found that Claimant did not have an impairment or combination of impairments that were functionally equivalent to a listed impairment. ECF Dkt. #13 at 10.  To be functionally equivalent to a listed impairment, the impairment must result in marked limitations in two domains of functioning or an extreme limitation in one domain.  20 C.F.R. § 416.926a(a).  Plaintiff then states that the ALJ found that Claimant had a marked limitation in the domain of interacting and relating with others, and that

this finding is not disputed. ECF Dkt. #13 at 10. However, according to Plaintiff, the ALJ erred when evaluating the domain of attending and completing tasks. *Id.*

Next, Plaintiff avers that the record demonstrates that Claimant had serious difficulties in the domain of attending and completing tasks. ECF Dkt. #13 at 11. Specifically, Plaintiff notes that a Connor's 3rd Edition Teacher rating scale performed in March 2012 revealed that Claimant had markedly atypical/significant inattentive behaviors. *Id.* Plaintiff also states that during structured observation of classroom behavior, Claimant was observed to be on task only sixty-eight percent time during silent reading and group discussion, and only sixty-three percent of the time during a math lesson. *Id.* (citing Tr. at 193). Continuing, Plaintiff states that in a summary of the Evaluation Team Report containing the above observations, it was noted that Claimant: displayed significant difficulty paying attention and concentrating; had difficulty following through with directions and needed frequent reminders; was unable to hold information in his mind long enough to complete an activity; was often off-task; and had difficulty maintaining focus when not working one-on-one with an adult or in a small group setting. *Id.*

Plaintiff next discusses a questionnaire completed by Claimant's fourth-grade teacher in March 2013. ECF Dkt. #13 at 11. Claimant's teacher indicated that he had very serious problems: paying attention; sustaining attention; focusing long enough to finish a task; re-focusing when necessary; carrying out simple step instructions; changing activities; organizing his things; completing in-class and homework assignments; completing work accurately without careless mistakes; working without distracting self or others; and working at a reasonable pace and finishing work on time. *Id.* (citing Tr. at 158). Plaintiff also points to a questionnaire submitted by Claimant's intervention specialist, completed in March 2013, reporting that Claimant had difficulty paying attention, concentrating, following directions, and maintaining focus, and that he needed frequent reminders. *Id.* (citing Tr. at 302). Next, Plaintiff states that a teacher questionnaire completed in September 2014 indicates that Claimant had difficulty staying focused, and needed extra assistance, instruction, and time to complete tasks. *Id.* (citing Tr. at 243). Plaintiff asserts that these records demonstrate that Claimant's attention

deficit/hyperactivity disorder ("ADHD") has caused him serious difficulties in the domain of attending and completing tasks. *Id.*

Continuing, Plaintiff asserts that the ALJ was selective in the portions of the record considered when determining that Claimant had only marked limitation in the domain of attending and completing tasks. ECF Dkt. #13 at 12. To support this assertion, Plaintiff claims that the November 2012 report, read as a whole, showed concerns regarding attention, hyperactivity, impulsiveness, disruptive behavior, aggression, and low grades, which supports the conclusion that Claimant has a marked limitation in the domain of attending and completing tasks. *Id.* Plaintiff further contends that the ALJ selectively chose information contained in reports from the intervention specialist and the ME, as well as the September 2014 teacher questionnaire. *Id.* Regarding the opinions of the state agency psychological consultants and the ME, Plaintiff avers that these opinions fail to take into account all the evidence of record. *Id.* Plaintiff also avers that the ALJ's assignment of great weight to the ME's opinion was error given the "complete lack of justification" for the opinion. *Id.* at 13. For these reasons, Plaintiff asserts that Claimant has a marked limitation in the domain of attending and completing tasks, and thus, coupled with the marked limitation in the domain of interacting and relating to others, Claimant's impairments are functionally equivalent to a listed impairment. *Id.*

Defendant contends that substantial evidence supports the ALJ's finding that Claimant had less than a marked limitation in attending and completing tasks. ECF Dkt. #18 at 10-18. First, Defendant indicated that the ALJ began by noting that despite the alleged onset date being in September 2006, the first relevant evidence in the record is the school evaluation from March 2012. *Id.* at 11 (citing Tr. at 18). Continuing, Defendant states that the ALJ acknowledged the testimony of Plaintiff, who stated that Claimant: did not finish what he started; did not complete homework; and did not complete chores. *Id.* at 12. Defendant asserts that the ALJ found that some of this behavior was volitional, as Claimant testified that he: did not finish chores because he was bored and did not want to do the chores; was not distracted at school; and sometimes did not finish class work that was "super hard stuff." *Id.* (citing Tr. at 22, 41-42). Further, Defendant states that the ALJ also acknowledged that Claimant had some difficulties with

-9-

hyperactivity and inattention, but his ability to attend to tasks improved when he took his medication. *Id.* Defendant continues, indicating that the ALJ also noted that Claimant received only sporadic treatment. *Id.*

Next, Defendant avers that the evaluation performed in November 2012 specifically stated that Claimant could be persistent when he wanted to learn something new, and that he was dressed appropriately, upbeat and cheerful, and had appropriate eye contact during the clinical interview. ECF Dkt. #18 at 12 (citing Tr. at 22, 265, 268). Defendant also states that the ALJ relied on educational records in which Claimant's most recent homeroom teacher stated that he had no physical limitations, had many friends, was very organized, and could transition well from activity to activity. *Id.* (citing Tr. at 20, 22, 244). Additionally, Defendant indicates that Claimant's intervention specialist reported that Claimant was making adequate progress across every academic objective in his individualized education plan. *Id.* Defendant continues, stating that the ALJ acknowledged the report from a psychological evaluation conducted in October 2012, which reported that Claimant had a normal appearance, thought content, behavior, speech, thought process, and perception during multiple visits with the evaluating psychologist. *Id.* (citing 18, 260).

Defendant next contends that the ALJ considered other aspects of Claimant's life that were aggravating his behaviors. ECF Dkt. #18 at 13. Specifically, Defendant indicates that the ALJ recognized that Claimant reported that he had trouble sleeping because Plaintiff did not come home as promised. *Id.* (citing Tr. at 18, 311). Additionally, Defendant states that another issue for Claimant was Plaintiff's sporadic attendance in continuing psychiatric supportive treatment, which was recommended to educate Claimant's caregivers regarding ways to decrease his mental health symptoms. *Id.* (citing Tr. at 18, 312). Further, Defendant notes that the ALJ considered Claimant's excessive unexcused absences from school, which were pointed to as negatively impacting his classroom performance. *Id.* (citing Tr. at 20, 156-58).

Moreover, according to Defendant, the ALJ relied on the testimony of the ME, who opined that Claimant had less than a marked limitation in the domain of attending and completing tasks. ECF Dkt. #18 (citing Tr. at 19, 53). Defendant states that Plaintiff is unable

to point to any medical source opinion disagreeing with the ME's opinion. *Id.* Rather, as stated by Defendant, both state agency psychological consultants agree that Claimant had less than a marked limitation in this domain. *Id.* (citing Tr. at 19, 64, 73).

Moving on, Defendant contends that the ALJ did not cherry-pick evidence, as suggested by Plaintiff, but rather acknowledged that Claimant had some limitations in the domain of attending and completing tasks, albeit less than marked. ECF Dkt. #18 at 14. Continuing, Defendant asserts that even if the ALJ did not expressly mention every item addressed in the school evaluations, a fair reading of the decision demonstrates that the ALJ was well aware of these facts. *Id.* Defendant states that the ALJ cited the school's report multiple times and discussed the school's decision to place Claimant in special education due to symptoms associated with ADHD. *Id.* (citing Tr. at 18, 198). Likewise, Defendant indicates that the ALJ cited both the school's report and the intervention specialist's report stating that Claimant required two-hundred minutes of weekly intervention services and other specialized accommodations. *Id.* (citing Tr. at 18, 228, 301). Defendant further states that the ALJ recognized that the intervention specialist reported that Claimant had significant difficulty paying attention and concentrating, and noted that he struggled academically and had "significant symptoms associated with ADHD." *Id.* (citing Tr. at 18, 20, 302). Defendant then asserts that the ALJ was not required to explicitly address every piece of evidence in the record. *Id.* (citing *Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir. 2004)).

Continuing, Defendant avers that Plaintiff wrongly argues that the ALJ ignored questionnaires from Claimant's teachers. ECF Dkt. #18 at 15. Defendant states that the ALJ evaluated both questionnaires and portrayed each fairly, laying out the information in each and explaining the weight assigned to the questionnaires. *Id.* Further, according to Defendant, the ALJ weighed competing evidence of limitations along with Claimant's areas of strength, and the outcome of this comparison was squarely within the ALJ's discretion. *Id.* at 15-16.

Defendant next asserts that the ALJ appropriately weighed the opinions of the ME and state agency psychological consultants. ECF Dkt. #18 at 16. According to Defendant, Plaintiff's argument that the ALJ relied too heavily on the opinions of the ME and state agency

psychological consultants is nothing more than a disagreement about how the ALJ weighed various medical opinions, which is not a basis for setting aside the ALJ's factual findings. *Id.* (citing *Mullins v. Sec. of H.H.S.*, 836 F.2d 980, 984 (6th Cir. 1987)). Defendant asserts that it is her function to consider all of the evidence and resolve conflicts in the medical evidence. *Id.* (citing *Hardaway v. Sec. of H.H.S.*, 823 F.2d 922, 927 (6th Cir. 1987)).

Regarding the ME's opinion, Defendant contends that the ME explained his reasons for finding less than a marked limitation in the domain of attending and completing tasks, namely: while oppositional defiant disorder ("ODD") was a valid psychological impairment, it was partially volitional and self-limiting; ODD was not permanent; and that Claimant's impulsiveness was amenable to medication. ECF Dkt. #18 at 16 (citing Tr. at 36, 44-45, 55, 303). Defendant continues, stating that the ALJ explained that he gave the ME's opinion great weight because he had a longitudinal view of the record, his opinion was consistent with the record as whole, and he had specialized knowledge as to the Social Security disability program. *Id.*

Next, Defendant claims that the ALJ appropriately weighed the opinions of the state agency psychological consultants. ECF Dkt. #18 at 17. Defendant states that SSR 96-6p states that findings of fact made by state agency physicians must be treated as expert opinion evidence of non-examining sources because the state agency physicians are highly qualified doctors who are also experts in Social Security disability evaluation. *Id.* Further, according to Defendant, the ALJ did not accept the opinions of the state agency psychological consultants wholesale, but rather considered the evidence as a whole and found a marked limitation in the domain of interacting and relating to others where the state agency psychological consultants did not make such a finding. *Id.*

In conclusion, Defendant asserts that "[d]iscretion is vested in the ALJ to weigh all the evidence." ECF Dkt. #18 at 18 (quoting *Collins v. Comm'r of Soc. Sec.*, 357 Fed.Appx. 663, 668 (6th Cir. 2009)). Defendant maintains that the ALJ did not abuse his discretion in this cases as he appropriately weighed and considered the record evidence, and then reasonably determined that

compared with the performance of children his own age, Claimant had less than a marked limitation in domain of attending and completing tasks. *Id.*

Plaintiff's arguments are without merit. The question before the Court is whether the ALJ's finding that Claimant had less than a marked limitation in the domain of attending and completing tasks is supported by substantial evidence. *See* 42 U.S.C. § 405(g). While evidence exists supporting a finding that Claimant has a marked limitation in the domain of attending and completing tasks, substantial evidence supports the ALJ's conclusion that Claimant has less than a marked limitation in this domain. *See Walters*, 127 F.3d at 528. For example, the ALJ indicated that, despite Plaintiff's allegations that Claimant had problems focusing and did not finish homework or complete what he starts, Claimant testified that he did not complete his chores because he was bored and did not want to perform the chores, and that he was not distracted at school. Tr. at 22. Additionally, the ALJ recognized that Claimant had some difficulty with hyperactivity and inattention, but found that his ability to attend to tasks improved when he took his medication. *Id.* (citing Tr. at 36, 303). The ALJ also recognized that a report submitted in November 2012 based on psychological evaluations of Claimant found that he could "be persistent when he wants to learn something new." Tr. at 22 (citing Tr. at 265). Further, the ALJ cited a report from Claimant's most recent homeroom teacher indicating that he was very active and physically capable, and that he was very organized and could "transition well from activity to activity." *Id.* (citing Tr. at 244).

The ALJ also discussed aspects of Claimant's life that were aggravating his behavior. Tr. at 18. Specifically, the ALJ points to Claimant's statements that he has trouble sleeping because Plaintiff did not return home at night as promised. *Id.* (citing Tr. at 305-13). The ALJ also noted that Claimant reported feeling angry and disappointed when his father made plans to see him and then did not follow through. *Id.* The psychological evaluation also indicated that Claimant's attendance in individual behavioral health counseling and individual community psychiatric supportive treatment was sporadic, despite these interventions being designed to help treat Claimant and educate his caregivers on ways to decrease his mental health symptoms. *Id.* at

311-12. Additionally, the ALJ noted that Claimant's performance in school suffered from excessive unexcused absences. *Id.* at 20 (citing Tr. at 156).

Continuing, the ALJ relied upon the ME's opinion that Claimant had a less than marked limitation in the domain of attending and completing tasks. Tr. at 19. Plaintiff has failed to identify a medical source that contradicts the ME's opinion, and both state agency psychological consultants agreed that Claimant a had less than marked limitation in this domain. *See* Tr. at 64, 73. Additionally, Plaintiff's allegation that the ALJ cherry-picked evidence is without merit. The ALJ recognized Claimant's academic struggles, symptoms of ADHD, time spent with intervention services, and other developmental problems. *See* Tr. at 18-20. Defendant correctly states that the ALJ was not obligated to expressly mention every item contained in the record in the decision. *See Thacker*, 99 Fed.Appx. at 665. Likewise, the ALJ did not ignore the questionnaires prepared by Claimant's teachers, as alleged by Plaintiff. Rather, the ALJ specifically mentioned the questionnaires and explained his reasoning for the level of weight assigned to each. Tr. at 19-20. Plaintiff has failed to show that the ALJ's decision is not supported by substantial evidence.

For these reasons, the ALJ's finding that Claimant had less than a marked limitation in attending and completing tasks is supported by substantial evidence. Accordingly, Plaintiff has failed to show that Claimant's impairments were functionally equivalent to a listed impairment, and thus Claimant is not considered disabled under the Social Security Act. *See* 20 C.F.R. § 416.924(d)(2).

## VI. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

Date: July 3, 2017         */s/George J. Limbert*
                            GEORGE J. LIMBERT
                            UNITED STATES MAGISTRATE JUDGE